IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello

Civil Action No. 09-cv-01557-CMA-CBS

RICHARD STEELE, and
EDWARD J. EVEY,

    Plaintiffs,

v.

THE UNITED STATES OF AMERICA,

    Defendant.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

This case arises under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b)(1), 2671-80. Plaintiffs Steele and Evey allege that the Bureau of Prisons ("BOP") was negligent in the events leading up to a prison riot at the U.S. Penitentiary ("USP") in Florence, Colorado. This matter comes before the Court on Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) (Doc. # 38), filed January 11, 2010.

## I. BACKGROUND

### A. FACTS

The Court has gleaned the facts presented below from the Plaintiffs' complaint (Doc. # 36) and affidavits submitted in support of Defendant's motion to dismiss (Doc. # 38).[1]

---

[1] As this is an attack on the facts upon which subject-matter jurisdiction depends, the Court has discretion to allow evidence outside of the pleadings. *Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995).

On April 20, 2008, the anniversary of Adolf Hitler's birthday, a fight broke out between white and black inmates at the USP in Florence, Colorado. (Doc. # 38-1, ¶ 3.) Plaintiffs were inmates of the USP at the time. (Doc. # 36 at 2.) The fight began shortly after noon on the soccer field. (Doc. # 38-1, ¶ 3.) The inmates were using a variety of weapons, including homemade knives, baseball bats, and pieces of wood. (*Id.,* ¶ 5.) Prison staff tried to gain control of the situation by announcing a recall, but the situation worsened until more than 200 inmates were participating in the melee. (*Id.,* ¶¶ 3, 6-7.) Prison staff decided that force was necessary to restrain the inmates. (Doc. # 36 at 2.) They fired lethal rounds into the melee and were eventually able to contain the melee and control the inmates. (Doc. # 38-1, ¶¶ 9-10.)

As a result of the melee, Plaintiff Steele sustained a gun shot wound to his foot. (*Id.,* ¶ 11.) He was successfully treated at the prison. (*Id.*) Plaintiff Evey sustained a puncture wound to the right side of his neck. (*Id.,* ¶ 12.) Prison staff identified his injuries and sent him to a local hospital where he was treated. (*Id.*)

Plaintiffs allege that the consumption of homemade alcohol by the white inmates was a primary reason for this disturbance. (Doc. # 36 at 3.) They further allege that prison staff knew about the alcohol consumption but turned a blind eye to it. (*Id.*) They also allege that prison staff knew that there was going to be a disturbance because inmates told several guards that the Aryan Brotherhood was planning an assault on black inmates, but the prison staff failed to act to prevent the disturbance. (*Id.*) Finally, they allege that the BOP was on notice that the USP was understaffed because of a lawsuit filed against the prison, a press conference, an uprising over a year before this incident, and inquires from U.S. Senator Ken Salazar. (*Id.* at 3-4.)

B.  **PROCEDURAL HISTORY**

On July 1, 2009, Plaintiffs filed a claim against the BOP and three unknown Federal Corrections Officers alleging negligence for the events leading up to the April 20, 2008 riots.  In particular, Plaintiffs alleged negligence for the following: (1) failing to adequately staff the USP in Florence, Colorado; (2) failing to adequately train and supervise the prison staff at the USP; (3) failing to properly enforce the rules and regulations of the BOP by allowing alcohol and homemade weapons within the USP; (4) failing to take preventative measures because it was Adolf Hitler's birthday; and (5) failing to properly provide for the safety, health, and welfare of inmates.  (Doc. # 36. at 3.)  On December 21, 2009, Plaintiffs filed an amended complaint naming the United States as the sole defendant.  (*Id.*)

On January 11, 2010, Defendant filed a Motion to Dismiss for Lack of Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(1) (Doc. # 38), arguing that this Court does not have subject-matter jurisdiction because these claims fall within the discretionary function exception of the FTCA, 28 U.S.C. § 2680(a).  On January 29, Plaintiffs responded (Doc. # 39), and on February 16, Defendant replied (Doc. # 45).  The case has been stayed pending resolution of this motion.  (Doc. # 44.)

## II.  DISCUSSION

A.  **STANDARD OF REVIEW**

Defendant filed its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1):

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms.  First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint.  In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.

> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995) (citations omitted). Moreover, it is the plaintiff's burden to demonstrate that the Court has subject-matter jurisdiction over this complaint. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002).

In the instant case, Defendant's motion challenges the facts upon which subject matter depends; therefore, the Court has considered affidavits submitted with the motion. *Holt*, 46 F.3d at 1002-03. Defendant argues that this action falls under the discretionary function exception to the FTCA, 28 U.S.C. § 2680(a); thus, the Court must consider the statutes, regulations, and policies of which the Plaintiffs allege the BOP was negligent in enforcing to determine if they are discretionary.

**B.    ANALYSIS**

Pursuant to the FTCA, the United States waives sovereign immunity and can be held liable for certain wrongful acts or omissions of a federal employee under circumstances in which a private person would be liable to a plaintiff according to the law of place where the act or omission occurred. 28 U.S.C. § 1346(b). However, pursuant to 28 U.S.C. § 2680(a),[2] the United States retains sovereign immunity from

---

[2] 28 U.S.C § 2680(a) states that the FTCA will not apply to:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

liability for torts committed by its employees in the exercise of discretionary functions. Pursuant to this provision, the United States cannot be held liable for any damages resulting from its employees' acts or omissions unless a federal statute, regulation, or policy mandates a course of action and the employee fails to follow that mandated course of action. *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). The purpose of this exception is to "prevent judicial second guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 536-37 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)) (internal quotations omitted).

The Supreme Court has established a two pronged test to determine if the discretionary function exception applies: (1) whether the act involves an element of judgment or choice and (2) whether there might have been some sort of policy judgment underlying that act. *Id.* at 536. Both prongs must be met for the exception to apply. *Id.* The first prong is met if the Court determines there was not a federal statute, regulation, or policy in place that specifically mandated a particular course of action. *Id.* If the first prong is met, the Court must then consider whether "that judgment is of the kind that the discretionary function exception was designed to shield." *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991). If the judgment might be based on policy considerations, then the second prong is met. *Sydnes v. United States*, 523 F.3d 1179, 1185 (10th Cir. 2008).

With respect to the first prong, i.e., determining whether a statute, regulation or policy allows for discretion, courts have broadly constructed such provisions. *See, e.g.*, *Cohen v. United States*, 151 F.3d 1338, 1343 (11th Cir. 1998). In the Tenth Circuit,

words such as "reasonable belief" and "when necessary," give government employees discretion. *Flynn v. United States*, 902 F.2d 1524, 1531 (10th Cir. 1990). For a Tenth Circuit court to find that the regulation is not discretionary, there must be some "fixed standard" for government employees to follow. *Id.*

Similarly, in determining whether the second prong is met, courts have applied an expansive view of the policy considerations underlying the discretionary decisions. *Sydnes*, 523 F.3d at 1185. Particularly, in the prison context, Supreme Court precedent cautions courts to afford prison officials deference in reviewing their decisions. "The operation of a correctional institution is at best an extraordinarily difficult undertaking," *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974), and "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform," *Procunier v. Martinez*, 416 U.S. 396, 405 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989). Thus, "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators." *Rhodes v. Chapman*, 452 U.S. 337, 349 n.14 (1981). Decisions by prison officials are generally "of the kind that the discretionary function exception was designed to shield." *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991).

Turning to the case at hand, Plaintiffs assert five negligence claims, which the Court will address in order.[3]

---

[3] In its response, Defendant addressed the use of force during the riot. However, in their complaint, Plaintiffs did not raise or assert any claims arising from the use of deadly force. As such, the Court need not decide whether the use of force falls in the discretionary function exception to the FTCA.

1. <u>The Discretionary Function Exception Bars Plaintiffs' Claims Based on Alleged Failures to Train and Supervise or Staff the USP Adequately</u>.

Plaintiffs' first two claims are that the United States inadequately staffed the USP and inadequately trained and supervised the responding staff at the USP. The regulations at issue are BOP Program Statement 3000.003.312.1, which states that supervisors and managers are responsible for "effective workforce utilization" and BOP Program Statement 5566.06 ¶ 16(a), which states that the Warden "shall determine how many staff should be trained in confrontation avoidance procedures."

These regulations do not direct a mandatory course of conduct. They do not specifically dictate how the staff must be used, how guards must be supervised, who should be trained, what techniques must be taught, or how much time needs to be spent in training. *See* BOP Program Statements 3000.003.312.1, 5566.06 ¶ 16(a). Moreover, other courts have found prison staffing decisions discretionary. *See, e.g.*, *Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) ("Decisions with regard to . . . allocation of guards and other correctional staff must be viewed as falling with the discretionary function exception to the FTCA."); *Mitchell v. United States*, 149 F. Supp. 2d 1111, 1114 (D. Ariz. 1999) ("Decisions by governmental officials as to the . . . number of guards to employ to supervise a given area . . . are judgment calls."). These regulations meet the first prong of the discretionary function test, i.e., they do not direct a mandatory course of conduct. *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).

These regulations also meet the second prong of the discretionary function test; they are decisions with policy implications, i.e., decisions about the safety of the prison and how best to use scarce resources. *See Sydnes v. United States*, 523 F.3d 1179, 1185 (10th Cir. 2008). Thus, this Court should not engage in post-hoc examination of

7

these decisions via a tort claim. *Rhodes v. Chapman*, 452 U.S. 337, 349 n.14 (1981); *see also Santana-Rosa v. United States*, 335 F.3d 39, 44 (1st Cir. 2003) (stating that prison staffing decisions are the type of decisions the discretionary function exception was designed to shield); *Miller v. United States*, No. 03-3021, 1993 WL 137103, at *1 (10th Cir. Apr. 23, 1993) (unpublished) (stating that the decisions prison staff make during a fight are the type of decisions the discretionary function exception was designed to shield). As such, the Court finds that claims based on failures to train, supervise or staff the USP are barred by the FCTA's discretionary function exception.

    2.    <u>The Discretionary Function Exception Bars Plaintiffs' Claims Regarding Alleged Failures to Enforce Prohibitions on the Use of Alcohol and Weapons by Inmates</u>.

Plaintiffs' third claim is that the United States was negligent because Bureau staff failed "to properly enforce the rules and regulations of the prison facility" by allowing inmates to consume alcohol and possess weapons (Doc. # 36 at 3.) Defendant concedes that the BOP prohibits inmates from possessing alcohol or weapons but nevertheless argues that prison officials have discretion in enforcing these prohibitions. (Doc # 38 at 19.) The regulations at issue are 28 C.F.R. § 550.10 (2010), which provides that the warden "shall establish procedures for monitoring and testing individuals" for alcohol and 28 C.F.R. § 552.11 (2010), which describes what types of searches prison staff may conduct in order to detect and confiscate contraband: (1) "staff **may** conduct a pat search of an inmate on a routine or random basis to control contraband;" (2) "staff **may** conduct a visual search where there is reasonable belief that contraband may be concealed;" and (3) a "digital or simple instrument search **may**

be conducted only if the Warden or Acting Warden has a reasonable belief that an inmate is concealing contraband" (emphasis added).

These regulations do not mandate a specific course of conduct to prevent inmates from possessing contraband. The Warden has discretion to decide how to implement the alcohol testing program. The only mandatory conduct this regulation directs is that the Warden establish some sort of program. It is undisputed that the Warden complied with this directive.[4] (Doc. # 38-2 at 40.) The language of the regulation allowing prison staff to search inmates for contraband is also discretionary. Prison staff are not required to search inmates for contraband, but they **may** do so under certain circumstances.[5] Moreover, other courts have found that prison officials' decisions about how to search for contraband are discretionary. *See, e.g.*, *Alfrey v. United States*, 276 F.3d 557, 565 (9th Cir. 2002) (holding that searching an inmate's cell is a discretionary decision); *Graham v. United States*, No. CIV. A. 97-1590, 2002 WL 188573, at *4 (E.D. Pa. Feb. 5, 2002) (unpublished) (holding that the decision to allow inmates to have razor blades, which were used as weapons, is a discretionary decision). This Court agrees that these decisions are discretionary. Thus, the first prong of the discretionary function test is met.

With respect to the second prong, testing inmates' alcohol use and searching inmates for contraband both involve economic policy concerns regarding how to best use limited monetary and human resources. *See Sydnes v. United States*, 523 F.3d

---

[4] The procedures the Warden established allowed for random tests and routine tests of suspect inmates – inmates with a history of alcohol abuse. (Doc. # 38-2 at 40.)

[5] These regulations mandate that the **inmates** abide by them, but they do not mandate a specific course of conduct for prison staff. (Doc. # 38-2 at 53, 59-62.)

1179, 1185 (10th Cir. 2008).  Moreover, these regulations and resulting decisions by prison staff are intertwined with the internal security of the USP, and courts should not second-guess prison officials' security determinations.  *Rhodes v. Chapman*, 452 U.S. 337, 349 n.14 (1981).  These are the types of decisions that the discretionary function exception was designed to shield.  The Court finds that, with respect to this claim, the second prong of the discretionary function test is also met.  *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991).  Therefore, Plaintiffs' claims regarding the alleged failure to enforce prohibitions on the use of alcohol and weapons on the inmates are barred by the discretionary function exception.

      3.      <u>The Discretionary Function Exception Bars Plaintiffs' Claims Regarding the Failure to Prevent the Incident</u>.

Plaintiffs' fourth claim is that the BOP failed to prevent the incident when it "fail[ed] to take any preventative measures, after due notice, regarding the dangers of the particular date being Adolf Hitler's Birthday." (Doc. # 36 at 3.)  The parties do not cite, and the Court cannot find, any statute, regulation, or policy that dictates what prison staff must do under these circumstances.  Without a course of conduct mandated by a statute, regulation, or policy, the prison staff's discretion is not constrained.  As such, this decision is discretionary.  In addition, other courts have found prison officials' decisions about how to respond to threats or potential riots to be discretionary.  *See, e.g.*, *Calderon v. United States*, 123 F.3d 947, 951 (7th Cir. 1997) (finding that deciding how to respond to a threat on an inmate is discretionary); *Buchanan v. United States*, 915 F.2d 969, 972 (5th Cir. 1990) (finding that deciding how to respond to the possibility of a prison riot is discretionary).  This Court thus finds that the first prong of the discretionary function test is met.

Similarly, deciding how to respond to these types of circumstances involves policy considerations relating to prison security, a matter better left to the discretion of prison officials. *See Sydnes v. United States*, 523 F.3d 1179, 1185 (10th Cir. 2008); *Rhodes v. Chapman*, 452 U.S. 337, 349 n.14 (1981); *Buchanan*, 915 F.2d at 972 (refusing to second-guess the decision of prison officials in responding to a potential riot). This Court finds that the second prong of the discretionary function test is met. Therefore, the discretionary function exception to the FTCA bars Plaintiffs' claims regarding the failure to prevent the incident.

  4. <u>The Discretionary Function Exception Bars Plaintiffs' Claims Regarding the Safety, Health and Welfare of Inmates</u>.

Plaintiffs' final claim is that the BOP was negligent in its "failure to provide for the safety, health, and welfare of inmates." (Doc. # 36 at 3.) Although the Plaintiffs do not identify a statute, regulation, or policy pursuant to which this claim is made, the Court infers that this claim is made pursuant to 18 U.S.C. § 4042, which provides guidelines for the care of prisoners. In pertinent part, § 4042 provides generally:

> The Bureau of Prisons, under the direction of the Attorney General, shall - (2) provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses or otherwise; (3) provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States.

Turning to the first prong of the discretionary function exception, *i.e.*, whether there is a particular statute that mandates a specific course of conduct, although § 4042 uses the word "shall," prison officials are granted discretion to decide what suitable quarters are, what is necessary to provide for the subsistence of prisoners, and how best to keep inmates safe. *Berkovitz v. United States*, 486 U.S. 513, 536 (1988).

11

Additionally, courts reviewing tort claims arising from § 4042 have decided that it does not mandate a specific course of conduct. *E.g.*, *Garza v. United States*, 161 Fed. Appx. 341, 343 (5th Cir. 2005) (unpublished) ("Section 4042's mandate to protect prisoners . . . does not] define a non-discretionary course of action specific enough to render the discretionary function exception inapplicable."); *Cohen v. United States*, 151 F.3d 1338, 1343 (11th Cir. 1998) ("[W]hile it is true that § 4042 sets forth a mandatory duty of care, it does not, however, direct the manner by which the BOP must fulfill this duty." (quoting *Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997))); *Queen v. United States*, No. 05-3341-KHV, 2007 WL 628182, at *4 (D. Kan. Feb. 26, 2007) (unpublished) ("Because Section 4042 imposes only a general duty of care on the BOP, prison officials have discretion in deciding how to accomplish these objectives."). This Court agrees with these cases. This claim thus meets the first prong of the discretionary function test.

This claim also meets the second prong of the discretionary function test because the judgment was based on social and economic policy considerations that underlie all of the BOP's decisions regarding how best to provide for the safety, health, and welfare of inmates. *Calderon*, 123 F.3d at 951 ("It is clear that balancing the need to provide inmate security with the rights of the inmates to circulate and socialize within the prison involves considerations based upon public policy."). Thus, the Court should not second-guess how the BOP decided to operate the USP. *Berkovitz* 486 U.S. at 536-37. As such, these regulations meet the second prong of the discretionary function test. The Court thus holds that Plaintiffs' claims regarding the safety, health, and welfare of inmates are barred by the discretionary function exception.

## C. CONCLUSION

Because all five claims are based on statutes, regulations, or policies that allow BOP officials to exercise discretion and the statutes, regulations, or policies allow for policy considerations, all five claims fall under the exception to the FTCA codified in 28 U.S.C. § 2680(a). The discretionary function exception protects the government from suit, regardless of whether the BOP abused its discretion or was negligent in the performance of its discretionary functions (issues this Court need not, and does not, address on the merits). Accordingly, Defendant's motion is GRANTED and Plaintiffs' claims are DISMISSED WITH PREJUDICE.

DATED: June  15 , 2010

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge